IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MICHAEL W. SMITH                                                PLAINTIFF

v.                                        CIVIL ACTION NO.: 2:12-cv-00075-GHD

GAIL JACO and KIMBERLY D.
CHRESTMAN also known as Kimberly
D. Cherry                                                       DEFENDANTS

## MEMORANDUM OPINION

This matter between *pro se* litigants is before the Court for a decision following a bench trial. The Court, having heard the witnesses and reviewed the evidence and arguments of the parties, hereby finds as follows.

### *A. Introduction*

The various state law claims asserted in this diversity action arise from the parties' complicated and volatile relationship, which culminated in a home purchase in January of 2010. The home is located at 10265 Stephenson, Desoto County, Mississippi (the "subject premises"). Plaintiff Michael W. Smith ("Plaintiff") ultimately paid the purchase price of the home, the ownership of which—as between the parties here—is pivotal to the Court's resolution of the merits of the Plaintiff's claims.

While the sordid contested facts and an analysis of applicable law are set forth in detail below, a summary of the claims and defenses is as follows: Plaintiff alleges Defendant Kimberly D. Chrestman ("Defendant Chrestman") and her mother, Defendant Gail Jaco ("Defendant Jaco") (collectively, "Defendants") have unlawfully conspired to convert Plaintiff's lawful title by executing and recording a quitclaim deed to the subject premises from Defendant Chrestman

1

to Defendant Jaco (sometimes hereafter the "complained of conduct"). Plaintiff asserts this same conduct also gives rise to causes of action for fraud, trespass, breach of contract, negligence, gross negligence, and intentional infliction of emotional distress. In response, Defendants assert title to the subject premises has, at all times relevant, belonged to one or, for a brief period, the other of them. In short, they contend they may not convert or defraud another of that which was lawfully theirs when the alleged conversion occurred.

It is important to note Plaintiff does not seek to quiet title or otherwise reform the land records of Desoto County, Mississippi. As such, this Court's analysis, which follows, does not undertake to do so. The rights of third parties, such as lienholders or purchasers for value without notice of unrecorded instruments, if any, are not addressed by this decision. Should any party seek such relief, it should timely file an appropriate petition in the Desoto County Chancery Court.

Instead, this Court limits its ruling to deciding—as between the parties and for purposes of this litigation—the rightful owner of the subject premises at the time of the complained of conduct. If it is determined Plaintiff was the rightful owner at that time, then the Court will consider whether the alleged efforts of Defendants to deprive him of such ownership amount to meritorious claims of the type asserted against them. Should the Court conclude Plaintiff was not the lawful owner of the subject premises, no further analysis of Plaintiff's claims—all of which are premised on his lawful title to the subject premises at the time of the complained of conduct—will be warranted. In that instance, verdict shall be entered for Defendants.

## B. Factual and Procedural Background

### 1. Pre-Bench Trial

On December 3 or 4 of 2009, while serving jail time in Tennessee, purportedly on a conviction for violence against Defendant Chrestman, with whom Plaintiff has had a lengthy abusive personal relationship, Plaintiff and Defendant Chrestman executed a "loan agreement." The agreement recited that Plaintiff would make a "loan" to Defendant Chrestman to allow her to purchase a home. The agreement also recited that Defendant Chrestman was to transfer ownership of the acquired property to Plaintiff "by quitclaim deed as collateral." The agreement lacks specification of the amount of the proposed "loan," any terms thereof, a date for performance, or even the identification of the home to be purchased and conveyed to Plaintiff by quitclaim deed.

On January 5, 2010, Defendant Chrestman's mother, Defendant Jaco, was the highest bidder at a foreclosure sale of the property located at 10265 Stephenson, Desoto County, Mississippi. She bid $49,550 and instructed the trustee to name Defendant Chrestman as grantee of the deed. The trustee delivered the deed for the property to Defendant Chrestman, and the deed was duly filed in the Desoto County land records. Consistent with a prior agreement between Defendant Jaco, Defendant Chrestman, and Plaintiff, Plaintiff then transferred a $51,491.13 check dated January 13, 2010 to Defendant Jaco. The check's memo line stated: "[P]urchase of the home at 10265 Stephenson, including repairs and remodeling." The check was paid on January 15, 2010.

Approximately two months later, on March 22, 2010, Defendant Chrestman executed and delivered a notarized quitclaim deed of the subject premises to Plaintiff, while he was still

3

incarcerated. Plaintiff prepared the deed himself. Plaintiff was released from jail the next month in April 2010, and according to him, he attempted one or more times between April 2010 and July 2010 to have the quitclaim deed recorded in the Desoto County land records. The Desoto County Chancery Clerk allegedly informed him the quitclaim deed was in improper form for recording.[1] The quitclaim deed from Defendant Chrestman to Plaintiff remains unrecorded. According to Plaintiff, who maintains copies of the unrecorded instrument, he no longer has the original and believes it was stolen.

In July 2010, Plaintiff was again arrested and subsequently convicted for alleged acts of violence also perpetrated against Defendant Chrestman.

In August 2011, while Plaintiff remained in jail, Defendant Chrestman, who was residing at the subject premises, contends she learned the *ad valorem* taxes for the years 2006, 2007, and 2010 against the property were delinquent. Believing she would not qualify for a loan to satisfy the delinquent taxes and to make certain repairs she desired, Defendant Chrestman transferred the property to her mother, Defendant Jaco. Defendants made this transfer by quitclaim deed recorded in Desoto County, Mississippi, with the alleged expectation that Defendant Jaco, whose credit was apparently better than that of Defendant Chrestman, would pledge the property as collateral for a loan to satisfy the taxes and make repairs. Defendants allege Defendant Jaco ultimately did not have to pledge the quitclaimed property to obtain an additional $10,000 loan. A local bank apparently made an advance against an existing loan secured by Defendant Jaco

---

[1] The legal description of the property recited in the quitclaim deed appears to omit a reference to the particular division of the designated subdivision in which the lot involved is located. There is, however, no dispute among the parties as to the location of the subject premises, which is described in the quitclaim deed by physical address, subdivison, lot number, plat book, and page and township, section, and range.

and her husband's personal residence. Of the loan amount, Defendant Jaco and her husband allege they spent $8,373.26 on repairs and $2,213.08 on delinquent taxes for the home.

A month after Defendant Chrestman quitclaimed the deed to Defendant Jaco, Plaintiff learned of the transfer. Plaintiff contends the transfer occurred after—and in response to—a lawsuit he filed against Defendant Chrestman for unlawfully infecting him with an unwanted health condition and stealing certain personal property, including an automobile. Once Plaintiff learned of the Defendant Chrestman-to-Defendant Jaco transfer, he filed this *pro se* lawsuit in the United States District Court for the Western District of Tennessee. The complaint alleged the transfer to Defendant Jaco was unlawful and gave rise to a claim against both Defendants for breach of contract, fraud, conversion, intentional infliction of emotional distress, negligence and gross negligence, and trespass. Plaintiff sought damages, including but not limited to, return of the purchase price of the home, $100,000 in compensatory damages, and nullification of the transfer of the home from Defendant Chrestman to Defendant Jaco. On May 1, 2012, the case was transferred to the United States District Court for the Northern District of Mississippi.

In July 2012, while this suit was pending, Defendant Jaco transferred the property back to Defendant Chrestman by quitclaim deed, which is recorded in the Desoto County land records. Although Defendant Chrestman apparently occupied the subject premises rent-free for the duration of the time at issue, this action's complaint is premised on the transfer of the subject premises by Defendant Chrestman to Defendant Jaco. Plaintiff does not assert a claim concerning Defendant Chrestman's tenancy, if any.

2. Post-Bench Trial

Plaintiff remained incarcerated at the time of the bench trial, and accordingly, he appeared at trial by means of video conferencing. At that time, Plaintiff announced he no longer sought to have the purchase price of the home returned and, in view of the voluntary re-conveyance by quitclaim deed of the subject property by Defendant Jaco to Defendant Chrestman, he no longer sought to nullify the Defendant Chrestman-to-Defendant Jaco transfer. Instead, according to Plaintiff, the fact that Defendant Chrestman transferred the subject property to Defendant Jaco—though the property was subsequently re-conveyed by Defendant Jaco to Defendant Chrestman—nevertheless gives rise to claims against both Defendants for conversion, theft, breach of contract, intentional infliction of emotional distress, and trespass. Plaintiff seeks compensatory damages, allegedly well in excess of the diversity jurisdictional limit of this Court.

For their part, Defendants each acknowledged the subject premises was purchased at the foreclosure sale by Defendant Jaco, who instructed the trustee to convey title to Defendant Chrestman. All of the parties agree Defendant Jaco made the purchase under a verbal agreement, pursuant to which Plaintiff would reimburse Defendant Jaco for the purchase price of the property; all parties agree Plaintiff did so. It is also uncontested that Defendant Chrestman agreed to and subsequently did execute and deliver a quitclaim deed to the property to Plaintiff. Nevertheless, Defendants testified they believed that despite the delivery of the quitclaim deed to Plaintiff the subject home belonged to Defendant Chrestman and was a gift from Plaintiff to lure her back into an abusive relationship. Defendant Chrestman testified the quitclaim deed was executed and delivered by her to Plaintiff so, in the event of her death after her diagnosis with cancer, the property would not pass to her heirs. Defendant Jaco testified that Defendant Chrestman "made a mistake" when she signed and delivered the quitclaim deed to Plaintiff, and

in any event, it was not to be recorded by Plaintiff unless and until Defendant Chrestman died. According to Defendant Jaco, until the quitclaim deed was actually filed of record, it did not serve to convey ownership of the property to Plaintiff. Thus, Defendant Chrestman was free to convey the property to Defendant Jaco as she pleased. Defendants assert only after Defendant Chrestman refused to recant criminal accusations against Plaintiff did he undertake, albeit unsuccessfully, to have the quitclaim deed recorded. Plaintiff contends it was always his intent to record the quitclaim deed and the subject premises were never intended as a gift to Defendant Chrestman. Rather, Plaintiff contends that he intended to utilize it for rental property.

## C. Analysis

1. <u>Ownership of the Subject Premises at the Time of the Complained of Conveyance</u>

As noted earlier, the viability of the claims pursued at trial have as their foundation a finding that, as between the parties, Plaintiff was the lawful owner of the subject premises at the time of the transfer of the title from Defendant Chrestman to Defendant Jaco. *See, e.g., Tellus Operating Grp., LLC v. Tex. Petroleum Inv. Co.*, 105 So. 3d 274, 283 (Miss. 2012) (lawful ownership of property is an essential element of claim for conversion); *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 772 (Miss. 2004) (ownership is an essential element of conversion).

Accordingly, the Court will first address that issue. In Mississippi, the execution and delivery of an otherwise valid, but unrecorded, deed is sufficient to convey the grantor's ownership interest in the premises. *See Wolfe v. Estate of Wolfe*, 756 So. 2d 788, 790 (Miss. 1990) (fact that deeds were not recorded did not defeat contestant's claim to property; recording was only required in situations involving third-party purchaser for valuable consideration

7

without notice); *Craig v. Osborn*, 98 So. 598, 602 (Miss. 1924); *see also* Miss. Code Ann. § 89-1-1 (West 2015).

To the extent Defendants believed a recordation of the original quitclaim deed from Defendant Chrestman to Plaintiff was necessary to convey title to Plaintiff as between those with knowledge thereof,[2] they are simply mistaken. In short, because it is uncontested that Defendant Chrestman knowingly executed and delivered the quitclaim deed of the subject premises to Plaintiff, she and any other party with notice of same, including Defendant Jaco, may not lawfully deny Plaintiff's ownership thereunder.

This finding however, does not end the Court's inquiry, since, even if Plaintiff here was the lawful owner, as between the parties, of the subject premises at the time of the complained of conduct, Plaintiff may not recover on any of his state law claims absent proof, by a preponderance of the evidence, to satisfy every element of any such claim. For the reasons that follow, the Court is of the opinion that Plaintiff has failed to establish same and a verdict will be returned for Defendants as to the state-law claims for damages (the claims for conversion, trespass, intentional infliction of emotional distress, and breach of contract).

2. Conversion and Trespass Claims

Plaintiff's claim that the Defendant Chrestman-to-Defendant Jaco quitclaim deed constitutes negligent, grossly negligent, and/or intentional and/or fraudulent conversion or

---

[2] Apparently, Defendants are confusing their rights with those of third parties acquiring an interest in land without notice of the prior interest of one holding an unrecorded instrument. *See McMillan v. Aru*, 773 So. 2d 355, 363 (Miss. Ct. App. 2000) ("Generally, an unrecorded deed is without effect as to creditors who acquire their rights subsequent to the execution of the deed in good faith for value without notice and [before] the date that such deed is filed for record.") (citation and quotation marks omitted). The rights of third parties without notice of the quitclaim deed to Plaintiff are not at issue. Thus, Defendants' allegations concerning the purported reasons Plaintiff sought to record his quitclaim deed to the subject premises are not addressed in this opinion. Recordation, or the lack thereof, is not controlling on the issue between the parties of whether Plaintiff was owner of the premises under Mississippi law when Defendant Chrestman purported to convey title to the property to Defendant Jaco.

trespass to title to the subject premises (or conspiracy to do so) fails for the simple reason, as explained above, that the Defendant Chrestman-to-Defendant Jaco transfer was, as between the parties with knowledge of the prior unrecorded deed to Plaintiff, a legal nullity. "To establish the tort of conversion, there must be proof of a wrongful possession or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Ravenstein v. Cmty. Trust Bank*, 141 So. 3d 396, 404 (Miss. 2014) (citation and quotation marks omitted). The elements of a trespass-to-chattel claim[3] are essentially the same. *See* 5 Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law, § 41:77 (2014). In the instant case, the mere execution and delivery of a quitclaim deed from Defendant Chrestman to Defendant Jaco does not serve to satisfy any of the elements of a conversion or trespass claim because, as between the parties to this action, it had no effect on Plaintiff's actual ownership of the property. As explained, when the quitclaim deed was delivered to Defendant Jaco, Defendant Chrestman had already divested herself of any ownership of the subject premises by delivery of an earlier quitclaim deed to Plaintiff. A quitclaim deed does not cause a transfer of ownership that the grantor does not, in fact, have. *Rosenbaum v. McCaskey*, 386 So. 2d 387, 389 (Miss. 1980).

### 3. Intentional-Infliction-of-Emotional-Distress Claim

---

[3] To the extent Plaintiff's claim is that the transfer of the quitclaim deed from Defendant Chrestman to Defendant Jaco gives rise to a conversion of the real property itself, or to a physical trespass against the real property, the same fails for lack of proof by a preponderance of the evidence. "Conversion lies only for personal property . . . ." *Mossler Acceptance Co. v. Moore*, 67 So. 2d 868, 873 (Miss. 1953). Trespass to real property requires interference with the right of exclusive possession of one's land and an invasion of property that is the direct result of some act committed by the defendant. The act complained of in Plaintiff's complaint, the purported transfer of title to Defendant Jaco, did not itself amount to a physical entry onto the premises by or at the direction of Defendant Jaco. In fact, Plaintiff never presented any proof at trial that Defendant Jaco had ever unlawfully entered the subject premises. As for Defendant Chrestman, her grant of the quitclaim deed to Defendant Jaco may not, as a matter of law, itself subject her to a subsequent claim of trespass on account of her grantee's entry onto the land deeded. *See Gilmore-Puckett Lumber Co. v. Bank of Tupelo*, 170 So. 682, 683 (Miss. 1936) ("[O]ne who merely sells property to which he has no title is not liable for trespass committed by his vendee.") (citation omitted); *see also Odom v. Luehr*, 57 So. 2d 867, 787 (Miss. 1952).

A claim for infliction of emotional distress requires proof of the following elements:

> (1) [the defendant] acted willfully or wantonly towards [the plaintiff];
>
> (2) [t]he defendant's [acts are ones] which evoke outrage or revulsion in civilized society;
>
> (3) [t]he acts were directed at or intended to cause harm to [the plaintiff];
>
> (4) [the plaintiff] suffered severe emotional distress as a direct result of the [acts] of the defendant; and
>
> (5) [s]uch resulting emotional distress was foreseeable from the intentional [acts] of the defendant. . . .

*J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906–07 (Miss. 2011) (citation and quotation marks omitted). As applied in the instant case, the Court is unpersuaded that the execution and delivery of a quitclaim deed from Defendant Chrestman to Defendant Jaco constitutes intentional infliction of emotional distress. Defendants' testimony at trial was that the transfer was made to facilitate obtaining a loan to pay, in part, delinquent *ad valorem* taxes on the subject premises. If the taxes were not paid, title to the subject premises would likely have vested in third-party tax sale acquirers. Moreover, aside from Plaintiff's assertion that the transfer was in reaction to a lawsuit he filed against Defendant Chrestman, Plaintiff presented no evidence at trial that the Defendant Chrestman-to-Defendant Jaco quitclaim deed was for a purpose other than to facilitate the payment of delinquent land taxes. Such action inured to Plaintiff's benefit.

### 4. Breach-of-Contract Claim

Plaintiff claims the document entitled "loan agreement" executed by Defendant Chrestman and Plaintiff as described above was breached by the execution and delivery of the quitclaim deed from Defendant Chrestman to Defendant Jaco. The Court finds this claim is

without merit. In short, the alleged contract (a "loan agreement") is so lacking in specificity as to be completely unenforceable. The agreement relied upon does not identify an amount of money, a piece of property, terms of a loan, dates of performance, etc. Contractual terms must be stated with specificity to be enforceable. *See Woodruff v. Thames*, 143 So. 3d 546, 554 (Miss. 2014) (citation omitted); *see also White v. Cooke*, 4 So. 3d 330, 334 (Miss. 2009) (citation omitted).

### *D. Conclusion*

For the foregoing reasons, the Court finds that judgment on the asserted claims for damages (the claims for conversion, trespass, intentional infliction of emotional distress, and breach of contract) shall be in favor of Defendants Gail Jaco and Kimberly D. Chrestman and against Plaintiff Michael W. Smith. The Court further rules that, as between the parties, title to the real property is vested in Plaintiff Michael W. Smith and further that any action to quiet and confirm title to the real property should be brought in the Chancery Court of Desoto County, Mississippi.

A judgment in accordance with this opinion shall issue this day.

THIS, the 17 day of March, 2015.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE